UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOPHER MEDIA, LLC (formerly known as Local Clicks) dba Doctor Multimedia, a Nevada Limited Liability Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PHILLIP SPAIN, an individual; STEPHEN MARINKOVICH, an individual,<br><br>Defendants. | Case No.:  3:19-cv-02280-CAB-KSC<br><br>**ORDER ON JOINT MOTION RE: CLARIFICATION AND/OR ENFORCEMENT OF ESI ORDER; ORDER OVERRULING PLAINTIFF'S OBJECTION**<br><br>**[Doc. Nos. 70, 71]** |

Before the Court is the parties' Joint Motion and Motion Re: Clarification and/or Enforcement of ESI Order; Parties' Request for Sanctions (the "Joint Motion" or "Mot."). Doc. No. 70.  As set forth in the Joint Motion, the parties seek the Court's guidance as to who should bear the cost of extraction of defendants' ESI collected during the forensic examination of certain of defendants' electronic devices.  The Joint Motion is accompanied by the declaration of defendants' counsel (the "Berger Declaration"), the declaration of plaintiff's counsel and nearly 300 pages of exhibits.  *See* Doc. Nos. 70-1, 70-5.

On December 7, 2020, plaintiff filed an *ex parte* "Objection" to the Berger Declaration and requested that the Court strike the Joint Motion in its entirety or, alternatively, strike the Berger Declaration.  *See* Doc. No. 74.  The Court afforded

defendants an opportunity to respond to plaintiff's objection, which they did. Doc. No. 77.

For the reasons that follow, the Court determines that pursuant to the parties' negotiated forensic examination protocol, plaintiff bears the cost of extracting defendants' ESI. Plaintiff's Objection to the Joint Motion is overruled.

## I. BACKGROUND

### A. Forensic Examination of Defendants' Electronic Devices

On February 4, 2020, the parties moved the Court to enter an order for the forensic examination of Spain's and Marinkovich's cell phones, laptops, tablets, and other storage devices. Doc. No. 14 at 2. The parties "agree[d] and stipulate[d] that, subject to a mutually agreed protocol to preserve Defendants' personal, private and privileged information on such devices, Plaintiff may conduct a forensic examination at Plaintiff's cost." *Id.* The Court entered the Order for the forensic examination as requested by the parties on February 5, 2020. Doc. No. 16. The parties thereafter negotiated a "Joint Examination Protocol for the Preservation and Forensic Examination of Certain Media and Data Repositories" to govern the agreed-upon forensic examination (the "Protocol").[1]

Among the "stated goals" of the Protocol were to preserve defendants' electronic devices and other digital storage that might contain relevant ESI and to protect the parties' confidential and proprietary information. Protocol at ¶2(a), (c). By its terms, the protocol applied not only to the devices to be examined but to the ESI or "data" contained on those devices. *See*, *e.g.*, *id.* at ¶¶ 3 (defining scope of protocol to apply to digital media "that contain or may have contained the ESI that is the subject of this Protocol"), 8 (requiring forensic examiner to collect and store "image files contained on [defendants'] device[s]"), 11 (specifying chain of custody for "all imaged Digital Media and collected data"), 19

---

[1] Attached to the Joint Motion are an unsigned, undated document titled "Joint Examination Protocol for the Preservation and Forensic Examination of Certain Media and Data Repositories," which counsel represents is the operative Protocol, and a signed, undated copy of the same document. *See* Doc. Nos. 70-2, 70-6. Upon examination, the two documents appear identical apart from counsel's signatures. Citations and references to the "Protocol" herein refer to the executed copy. *See* Doc. No. 70-6.

(referring to counsel's "review" of "ESI at any step of this Forensic Review"), 20 (referring to plaintiff's access to "files" responsive to search terms), and 26 (referring to "evidence collected during this examination"). The parties agreed that the Protocol would govern any examination of defendants' devices, and neither the devices nor any ESI contained therein would be destroyed except by a third-party forensic examiner. *Id.* at ¶¶5, 13.

As set forth in the Protocol, the forensic examiner (jointly selected by the parties) would create mirror images of each of defendants' devices, maintain all such images and "collected data," and return copies of the same to defendants' counsel for review. *Id.* at ¶¶4, 8, 11, 13, 18. At the parties' request, the forensic examiner would also apply an agreed-upon set of search terms to the ESI collected from defendants' devices and prepare a log of responsive documents. *Id.* at ¶¶15-16. This log, together with other reports to be prepared by the forensic examiner, would be delivered to defendants. *Id.* at ¶16. The Protocol explicitly states that some reports were not to contain "actual content" of files or documents, while other reports were not so limited. *Id.* ¶17.

Within 30 days of receiving the "data" *and* "documentation" collected during the forensic imaging process, defendants were to clear for release to plaintiff or its counsel any relevant, nonprivileged ESI and provide a privilege and/or withhold log for any documents or files not to be released within. *Id.* at ¶18. Per the parties' agreement, plaintiff would then have "immediate access" to the "files" that were captured by the parties' search terms and cleared for disclosure "as specified in th[e] Agreement." *Id.* at ¶20. However, if defendants failed to designate ESI responsive to the parties' search terms for withholding (as privileged or otherwise) within the agreed-upon 30-day period, plaintiff would automatically gain access to those documents. *Id.* The Protocol also described procedures for the return or destruction of any of plaintiff's "proprietary" or "confidential" information as collected from defendants' devices during the forensic examination, and provided safeguards against the inadvertent production of documents or other "collected data" under the Protocol. *Id.* at ¶¶22-23, 27.

//

**B. The Parties' Dispute Over Costs**

Although the executed Protocol did not identify the parties' forensic examiner, *see* Protocol at ¶4, it appears from the Joint Motion that the parties selected Inventus to perform the examination. Mot. at 2. It is undisputed that Inventus performed the forensic examination, applied the search terms, and delivered the "hit logs" to defendants on September 2, 2020. *Id*. at 2, 8. Inventus did not, however, provide defendants with access to the actual documents collected from defendants' devices so that defense counsel could perform the necessary review for privilege, and Inventus refused to do so until defendants paid for access to the documents through their platform. *Id*. at 3, 8-9. A dispute arose between defendants and plaintiff as to whether the Protocol required defendants to pay for access to review the documents so that they could timely prepare a privilege and/or withhold log. *Id.* at 3. Inventus refused to give defendants access to the extracted ESI which it was hosting on its servers unless it was paid in full for its services, at an estimated cost of over $50,000. *Id.* at 3-4. Defendants refused to pay and requested that plaintiff pay the cost of providing them access to the documents per the Protocol. *Id.* at 4, 9. While Inventus appears to have agreed to extract documents onto their platform upon the approval of counsel for plaintiff and for defendants, presumably for defense review, plaintiff's counsel did not provide its approval for the extraction on the Inventus platform. *Id.* at 3.

In order to proceed with a review of the pertinent documents, defendants instead retained a separate vendor, Invendica, at their own expense, to store the responsive documents until the parties could resolve their cost dispute.[2] *Id.* at 3, 8-9. The parties met and conferred throughout September and October, at times involving representatives from Inventus and Invendica, to try to reach resolution. *Id.* at 3- 4, 9. On October 26, 2020, plaintiff demanded that defendants produce a privilege log by the close of business. *Id.* at 4. Ultimately, defendants paid Inventus $3,400 to transfer images of the ESI to Invendica

---

[2] Plaintiff objected to defendants' retention of Invendica because the parties had agreed to use Inventus and thus Invendica was "not authorized by the … [P]rotocol." *Id.* at 3.

4

3:19-cv-02280-CAB-KSC

for defendants' counsel's review, and paid Invendica $12,660 to process and host the documents for counsel's review. *Id.* at 4-5.

## II. ANALYSIS

### A. Plaintiff Bears the Cost of Extracting Defendants' ESI

The unambiguous terms of the Protocol require plaintiff to pay for everything within its scope. *See id.* at ¶¶1 ("Plaintiff shall bear the full cost of this forensic examination"); 28 ("the cost of the extraction and retention of data will be paid by Plaintiff"). As explained above, this includes extracting, processing and hosting the ESI contained on defendants' devices so that defendants could review it. The Court's reading of the plain terms of the Protocol is further bolstered by the fact that every effort defendants made to enable their independent review of the documents was met with objections by plaintiff that defendants were operating outside of the parties' Protocol. *See* Mot. at 3-4.

Plaintiff is correct that "the responding party ***generally*** bears the expense of complying with discovery requests." *Price v. Synapse Group, Inc.*, No. 16CV1524-BAS(BLM), 2018 WL 9517276, at *10 (S.D. Cal. Sept. 12, 2018) (emphasis added); *see* Mot. at 6 ("[n]ormally, a producing party bears their [sic] own costs of reviewing and gathering documents"). But the parties here, through their experienced counsel, chose instead to negotiate a detailed protocol for the collection, review and production of ESI from defendants' electronic devices. Notably, the Protocol affords plaintiff considerably more control over that process than "normal" rules would allow. In exchange, plaintiff agreed to absorb the costs of that process.[3] Plaintiff cannot insist on rigid adherence to some provisions of the Protocol, while at the same time advocating for the application of "normal" rules when it comes to costs. The Court will hold plaintiff to its agreement. And,

---

[3] Defendants have asked only for the Court's guidance as which party bears the cost of extracting the ESI from defendants' devices and making it available for defendants' review under the Protocol. Mot. at 5. But, for the avoidance of doubt, the Court finds that the Protocol does not require plaintiff to reimburse defendants' counsel for their time spent reviewing the documents or compiling their privilege logs. Mot. at 6.

as plaintiff explicitly agreed to bear the cost of the forensic examination of defendants' devices, without any stated exceptions, the Court does not find it necessary to engage in a cost-shifting analysis.

The Court is also unpersuaded by plaintiff's argument that if defendants "honestly believed" the Protocol required plaintiff to pay for defendants' access to the documents, defendants "should have refused to pay."  Mot. at 10.  Defendants did just that.  *Id.* at 9.  In response, the forensic examiner essentially held defendants' documents hostage with plaintiff's acquiescence, while plaintiff demanded that defendants deliver the withhold log required by the Protocol under threat that defendants' privilege and privacy objections would be waived if no withhold log was forthcoming.  *Id.* at 3-4, 9.  The Court finds that defendants' decision to pay both vendors so that it could complete its review of the documents while the parties sought the Court's guidance was reasonable under the circumstances.

Finally, the Court does not agree that defendants "had chance after chance to bring this issue to the Court since January 2020."  *Id.* at 10.  For the reasons explained herein, defendants' understanding that the Protocol required plaintiff to bear the disputed costs was both reasonable and correct, and defendants had no cause to request clarification from the Court until the parties' dispute arose.  The Court finds the instant Motion timely.

**B. Plaintiff's "Objection" to the Joint Motion Is Overruled**

This Court's Chambers' Rules require parties to bring discovery disputes to the Court in the form of a joint motion.  *See* Chambers' Rules and Civil Pretrial Procedures for the Honorable Karen S. Crawford ("Chambers' Rules"), § VIII.E.  The Court hopes that by engaging in the joint motion process, the parties may identify additional areas for compromise, and, if not, will present a streamlined brief that articulates the dispute and the parties' positions "in a clearly organized and succinct format."  *Id.*

Unfortunately, that did not happen here.  Indeed, the joint motion procedure itself became a point of contention between the parties as they quibbled over not only the contents of the briefing but the mechanics of filing it.  Plaintiff's counsel, who insisted that

the parties had until midnight to finalize and file the Joint Motion, complains that defendants' counsel did not provide them with his two-page declaration for inclusion with the Joint Motion until 10:10 p.m. Doc. No. 71 at 2.  On that basis, plaintiff "objects" to the Joint Motion and requests that the entire Joint Motion be stricken, or alternatively, that the Court ignore the Berger Declaration.  *Id.* at 3-4.

Plaintiff's objection is overruled.  If counsel choose to wait until midnight to file documents, they can expect that drafts, declarations and exhibits will be exchanged late at night.[4]  Regardless, the Court has not relied on the Berger Declaration or any information related therein in resolving the issue presented in the Joint Motion.  Indeed, despite the nearly 300 pages of exhibits attached the Joint Motion, the Court needed only 11 of them – the Protocol itself – to address the parties' dispute.  Plaintiff's objection is therefore moot.  However, the Court takes this opportunity to express, again, its concern over counsel's inability to conduct themselves with the courtesy and professionalism expected by the Court.  *See* Civ. LR 2.1; Chambers' Rules § I.  This lack of cooperation has resulted in significant motion practice, caused needless delays, and consumed the Court's time and resources.  The parties and their counsel are again encouraged to earnestly meet and confer to resolve their disputes going forward, and to seek the Court's intervention only when necessary.

/ /
/ /
/ /
/ /
/ /
/ /
/ /

---

[4] While the parties are free to work beyond 5:00 P.M., the Court sees no reason why joint motions cannot be finalized and filed during regular business hours.

## ORDER

For the foregoing reasons, the Court finds plaintiff is responsible for the cost of extracting the ESI from defendants' devices and making that ESI available for defendants to review. Within 10 days of the date of this Order, plaintiff shall reimburse defendants and/or their counsel for their expenditures incurred in collecting and reviewing the ESI from defendants' devices, in the sum of $16,060.00

**IT IS SO ORDERED.**

Dated: January 8, 2021

Hon. Karen S. Crawford
United States Magistrate Judge